OPINION OF THE COURT
Chief Judge Breitel.
In this CPLR article 78 proceeding petitioner Chaipis, owner of a restaurant and bar, appeals from the Appellate Division’s unanimous confirmation of a determination by respondent State Liquor Authority canceling his liquor license, imposing a forfeiture of his bond, and disapproving renewal of the license.
The narrow issue is whether the State Liquor Authority may cancel a liquor license, based on the substantial evidence of licensee’s bad character, without evidently giving serious weight to critical services rendered by the licensee in consideration of representations of the prosecutor, later confirmed in *62 writing, concerning efforts to preserve the license. In broader terms, the issue involves the effect of prosecutorial representations made to a criminal defendant when fulfillment of those representations is beyond the power of the prosecutor and can be effected only by another arm of the State.
The judgment of the Appellate Division should be reversed, and the matter remitted to the State Liquor Authority for reconsideration. A prosecutor’s representation, even when qualified, impliedly or expressly, by the limited authority he possesses, to a criminal defendant or potential criminal defendant should not be lightly disregarded. While the representations may not bind other State agencies, they should not be ignored either. This is especially so when the reasonable expectations of the person addressed, who has made substantial contributions in return, would be frustrated. Competing policies are involved. The harm of fulfilling a representation, not illegal, but made by a prosecutor with limited authority, must be weighed against loss of public confidence in the State and its integrity if representations made by one arm of the State are treated lightly by another.
Petitioner Chaipis, having held since 1962 a liquor license for Magoo’s Cafe, was indicted and arrested in late 1973, and charged with the felony of promoting prostitution. On May 3, 1974, petitioner, pursuant to negotiation, pleaded guilty to one count of permitting prostitution, a misdemeanor. He was sentenced to a discharge conditioned upon his continued cooperation with the police and the special State prosecutor in pending investigations of widespread official corruption in the police department.
There is some dispute over the extent of the representations made to Chaipis at the time of the plea. Even accepting the version in the affidavit of the Manhattan bureau chief in the office of the special prosecutor, however, defendant was promised "that his cooperation would be brought to the attention of the New York State Liquor Authority with a view towards preserving his liquor license.” Defendant was also promised, and subsequently received from Supreme Court, a permanent certificate of relief from civil disabilities.
Chaipis’ co-operation was considerable. He testified before a "special” Grand Jury and before police department hearing boards, and his testimony led to enforced retirement of high ranking police officers. Such assistance in weeding out police *63 corruption is, of course, extremely valuable to the public, but not without grave danger to the witness.
On July 2, 1975, the State Liquor Authority, relying principally on petitioner’s indictment and conviction, instituted proceedings for revocation of his liquor license (see Alcoholic Beverage Control Law, §§ 118, 119). The charges were based on his prior activities in promoting prostitution in connection with his operation of the licensed premises. After a revocation hearing, the hearing officer sustained the charges. Then, effective August 12, 1976, despite letters from both the office of the special prosecutor and the police department in support of Chaipis reciting his significant contributions, the State Liquor Authority canceled the restaurant’s liquor license, imposed a forfeiture of petitioner’s $1,000 bond, and determined that the license for 1976-1977 should not be renewed (see Alcoholic Beverage Control Law, §§ 112, 118, 119). On August 31, 1976, the authority granted reconsideration, but adhered to its original determination. At no point did the authority indicate, except perfunctorily, the consideration it had given, if any, to petitioner’s efforts in the corruption investigation or to the written representations made by the special prosecutor.
Petitioner then brought this article 78 proceeding, but the Appellate Division confirmed the authority’s determination, and petitioner now appeals to this court. Cancellation of his license has been stayed throughout the court proceedings.
This case cannot be resolved, as the authority would have it, by the usual analysis in reviewing administrative determinations. It may be true that the authority’s license revocation rested on substantial evidence in the record of Chaipis’ prior misconduct, and that therefore the refusal to renew the license would not be arbitrary (cf. Matter of Avon Bar & Grill v O’Connell, 301 NY 150, 153; Matter of 125 Bar Corp. v State Liq. Auth., 24 NY2d 174, 178). That does not, however, comprise the whole case and therefore dictate affirmance. Instead, the effect of Chaipis’ significant efforts in rooting out police corruption and the representations made by the prosecutor must be considered.
It is a truism that a guilty plea, which waives even many constitutional rights, must be taken only when the defendant has knowledge and understanding of the consequences of the plea (see, e.g., People v Seaton, 19 NY2d 404, 406). If the plea be coerced, or if defendant’s knowledge of its consequences be *64 not explored sufficiently, the plea may be subject to vacation on proper and timely motion (see People v Gina M. M., 40 NY2d 595, 596-597).
A corollary of the prohibition on coerced guilty pleas is the obligation of prosecutors not to retract or falter on promises made to a criminal defendant in return for a plea of guilty (Santobello v New York, 404 US 257, 260-262). Moreover, within the criminal law enforcement system generally a representation made by one agent or agency is binding on another regardless of knowledge of the representation when made (id.; People v McLaurin, 38 NY2d 123, 126). Knowledge and understanding of the consequences of defendant’s plea is impossible if the prosecutor is free to change the consequences at will after the plea is entered. Therefore, if a prosecutor makes a representation within the scope of his power, and defendant acts in reliance upon the representation, defendant may be entitled to have the representation enforced, at least where merely vacating the plea would result in significant prejudice to defendant (see People v Selikoff, 35 NY2d 227, 239, cert den 419 US 1122).
Different, to some extent, is the prosecutor’s representation which extends beyond the power of his office. Enforcement of that type of representation would be unthinkable in some situations, as, for example, a promise by a prosecutor that, in return for valuable testimony about other public officials, a Judge would not be removed from office for bribe receiving. Even in less compelling situations, however, public policy would not permit excesses by a prosecutor to divest an independent body of its lawful discretion.
The rights of the criminal defendant, however, may not be sacrificed to the conflict between two arms of the State (cf. Santobello v New York, 404 US 257, 262, supra). The office of the special prosecutor and the State Liquor Authority are both but agents of the same State of New York, having a common public policy to enforce. Justice does not allow one agent to ignore promises made by the other, whatever the breadth of discretion involved.
Instead, an earlier promise made by a prosecutor, an agent of the State, must be treated as a highly significant factor when the State agency with the power to enforce the promise is called upon to do so. The mere fact that an agent of the State made a representation to a criminal defendant and the defendant then pleaded guilty, assertedly in reliance on *65 the representation, is entitled to weight. Even more important, emphatically, is an evaluation of the services performed by the promisee in return for the promise. Where those services have been significant, or have involved considerable risk or sacrifice on the defendant’s part, failure to enforce the promise might do substantial injustice, not only to the defendant but to the public which is entitled to have the benefit of future co-operation, and is to be avoided. Not to be ignored, of course, is the primary duty of the State agency to fulfill its statutory responsibilities when confronted with the prosecutorial promise or representation, but that duty must not be construed so narrowly as to exclude offsetting circumstances relating to the private and public justice of the matter.
Of course, the competing policies might often be resolved by permitting defendant to vacate the plea entered in reliance upon a promise made by a prosecutor without power to enforce it (see People v Selikoff, 35 NY2d 227, 241, supra). But in many instances, as in this case, merely vacating the plea would not make defendant whole again. Permitting defendant to proceed to trial is a satisfactory remedy when, by pleading guilty, defendant has given up nothing but his right to trial. But where the defendant not only waives his right to trial, but performs other services for the prosecutor as well, services that involve considerable risk or sacrifice, merely undoing the plea is small compensation, if any. In such cases, the representation made to a criminal defendant is entitled, at least, to considerable weight before the State agency empowered to fulfill it.
Not sanctioned, of course, is enforcement of promises made not only in excess of prosecutorial power, but in violation of the law (cf. People v Selikoff, 35 NY2d 227, 238, supra). When no agent of the State could legally perform the promise made to defendant, the promise may not be enforced or given consideration by other State agencies.
The representation made to Chaipis was certainly not illegal, and, on a surface analysis of the conceded content of the prosecutor’s representation, not beyond the power of the prosecutor to make. Chaipis was promised, according to the prosecutor, "that his cooperation would be brought to the attention of the New York State Liquor Authority with a view towards preserving his liquor license.” Admittedly, the Liquor Authority was advised of Chaipis’ co-operation. But, even on the prosecutor’s own affidavit, Chaipis could reasonably have *66 believed that the special prosecutor’s recommendation carried considerable weight before the Liquor Authority. Such a belief, reasonable as it would have been, does not, apparently, accurately portray the Liquor Authority’s attitude toward prosecutorial recommendations. Thus, however indirectly, and even innocently on the part of the prosecutor, Chaipis was misled by the prosecutor’s promise into believing his liquor license would be preserved.
In reliance on this belief, Chaipis assisted an investigation into one of the most pernicious types of crime, official corruption. While his own criminal activity is not to be minimized, his repeated testimony about corruption in government, fraught, as such testimony often is, with danger of retaliation by the corrupt targets, far exceeds the importance of his own execrable conduct. Rooting out official corruption is so important that until 1962 the crime of bribery was covered in the State Constitution and not left to statute alone (NY Const of 1894, art XIII, § 2, repealed Nov. 6, 1962). In short, Chaipis, like so many other lesser criminals before him, selfishly but nevertheless significantly, served the public good, and the representations made to him in eliciting his co-operation are entitled to weighty, albeit not conclusive, consideration before regulatory agencies who also serve the public weal.
Only the authority, of course, unless it acts arbitrarily, has the power to cancel or renew a liquor license. The discretion vested in the authority may not be arrogated by a prosecutor or by this court. But the authority may not, by self-imposed blinders, ignore its responsibility as an arm of the State, but only one among many. If it were so probable, almost to inevitability, that Chaipis, under any circumstances would, as a licensee, continue to be a source of harm to the public, denial of a license to him would be mandated. Moreover, even if the hapless Chaipis were to retain his license, his further right to retain it would be forfeit if he should misconduct himself in the future. The matter should, therefore, be remitted to the authority for reconsideration and a statement of reasons for whatever determination it makes in light of the principles expressed in this opinion.
The ultimate issue in this case is broad. As the State government becomes increasingly large, complex, and perhaps bureaucratic, its agencies may not proliferate a morass of conflicting authority and responsibility. Absent stated countervailing considerations, a promise or representation by one *67 agent of the State should be fulfilled by other agents of the State, as it undoubtedly would have been in simpler days.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court, New York County, with directions to remand to the State Liquor Authority for reconsideration.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Judgment reversed, with costs, and the matter remitted to Supreme Court, New York County, with directions to remand to the State Liquor Authority for reconsideration in accordance with the opinion herein.